May it please the Court, David D. Robertis for appellant Mr. Leyva. I have to say, I don't take lightly appealing and denial of class certification, but if there is ever a class certification order, I think, that needed to be appealed, we're looking at it. And when we look at the 23A findings that this District Court made, consistent with the Walmart decision that came out right when we were briefing this case, the Court correctly held that we have established common issues that will drive the liability answers in this case. And when we look at particularly the bonus claim, I mean, that is a claim that is 100, well, not 100%, but is as close to 100% on paper as a claim can be. There are nine different categories of bonuses. Testimony of the 30B6 witness will establish whether those bonuses were lawful or not, if we get to the merits of the issues. And there were direct admissions by the 30B6 witness that the exact same policy of calculating those bonuses and whether or not they were included in the regular rate applied to all class members. There's simply no individualized issue within that subclass other than the potential need to calculate individual damages. And that cannot preclude certification. And I think that, you know, we've probably been overboard on our briefs of laying out cases along those lines, but I think that's exactly what happened. Whether we look at this case from reliance on an improper factor, or which is what I think happened here, I do think the district court used individual damage determinations to avoid certifying this class, when this court and many courts have been clear you cannot do that. But even if we interpret the order the way that my colleagues on the other side of this issue interpret it, I still think we have a clear error in the weighing of the factors. If a regular rate class cannot be certified, I really don't know what type of wage and hour class can ever be certified. Can I ask you a question about the so-called, I guess I call it the rounding class? Yes. I understand that there's a damages argument there that's separate, and I understand your point that class certification shouldn't have been denied because of the damages argument. In that case, to use a word that we just threw around in the previous case, does the damages claim morph into the liability claim? In other words, we won't know whether somebody is liable without determining, in that case, whether they were a beneficiary or a victim of the rounding practices. And so with respect to that one particular group, aren't there separate questions with respect to everybody? Two points on that. I think that there has to be a distinction made between eligibility of claimants if the class is certified versus threshold liability. And the way I see this is, this is particularly given the unique circumstances of this rounding case. This is not like the typical rounding case. The typical rounding case is a policy that applies in both directions. And this one applies both ways. So it's possible that somebody was a beneficiary of this. But it doesn't apply both ways. Our first theory is because of the 29-minute increment used at the outset of the shift start, no law supports doing that. The federal law that our state follows does not approve it. You can round in 5-minute increments, you can round in 6-minute increments, or you can round in 15-minute increments. You cannot round in this 30-minute increment. So your theory is you get the ups but not the downs on the rounding? Absolutely. I think every minute of time rounded under an unlawful rounding practice cannot be permitted, has to be compensable. And the employer can't take away, in effect, the bonus minutes they gave them under their rounding up policy? Exactly. Not if they don't round in a legally permissible way. That's, I think, our first theory. Under that theory of recovery, which really is, and I know that Wal-Mart says we can kind of, there's an enmeshment of merits and class certification, but I don't think we have to decide that merits question. I don't think we have to make a full legal determination in this case about that merits question. But if we do win on that merits question, then everybody that did have time rounded, I mean the declarations that the defense submitted in this case, I count 16 declarations, 13 of those declarations confirm when they clock in, they start to work. That tells us that there is class-wide rounding liability here under the 29-minute theory. Now, let's assume I'm wrong on the use of a 29-minute increment destroys the right to round. And let's assume we have to prove there is an impact on a particular shift. Even in that scenario, I do, I don't think individualized issues predominate here, and I don't think there's any basis to find that. I mean, at the end of the day, and I know this Court's well aware that there are, and the defense brief talks about the Wal-Mart statement of trial-by-formula. If this case cannot be tried with representative testimony and statistical sampling, again, I don't think any case can be. We have such a discrete, narrow issue on that rounding class. If my primary theory is rejected and we have to establish kind of shift-by-shift analysis, all that has to be looked at from representative testimony is the things that were talked about in the declarations that the defense offered in this case. And those things are, when we got in, we clocked in and we began to work. We never worked outside of the clock to punch in and punch out. There is, I mean, I think that the record is undisputed on this record that we have that folks clocked in and began to work. And that time punch was correlated with beginning to work. Their own declarations say so. So even if we think that's an individualized determination, there's no evidence other than people clocked in began to work. So let me ask you a question. Sure. This is more of a practical question than a legalistic question. But suppose the district court had certified class. Let's suppose, I don't know, trial or through summary judgment, you somehow or other prevailed on the merits of any or all of your claims. Then it gets down to the question of how do you compensate the class members. What do you envision would happen? Well, do all these claimants have to come into the court and testify to establish whether they're entitled to any money at all? Absolutely not. How would it work? Okay, I have to answer that differently on the different claims. That's fine. Let me first establish on the bonus claim. The bonus claim, it literally is as simple as experts on each side looking at every bit of payroll data and coming to determinations. I mean, it is a mathematical equation. That's it. In their removal papers that are in the record, they went through the mathematical analysis to invoke federal jurisdiction. That's one of the ironies here. The very process they're saying, we cannot do a trial is how they got into federal court, by doing themselves in their declarations. So the very process that they did to get here is how we would approve the bonus claim at trial. Then we have an aggregate amount, and there could be administrative processes to collapse, like is often done in a class context. That's on the bonus issue. On the rounding issue, the answer to that question depends on the merits of my two theories of recovery. If we prevail on the 29-minute rounding is simply unlawful, therefore you cannot round any time, then it's, again, it's as simple as a mathematical equation by running payroll data. Because if they round to the detriment of the employee in an unlawful manner, then all of that time could be calculated from payroll records, and it could be compensable. If I do not prevail on the merits of that claim, and then we are, then I think this is a case where representative testimony and statistical sampling can be done. And I want to talk about that a little bit, although it's not a focus of briefing. The process of it is so simple here. Again, literally all that has to be done is survey evidence would need to say to these, to the putative class members, or hopefully the non-putative class members, all the survey evidence would have to show is when you clocked in, did you begin to work? Always, sometimes, never, you know, something like that. And how often? How often were there times where you clocked in and did not begin to work? It's such a simple issue. It is so different than, for example, you know, in the Walmart context where what we were talking about was a pattern and practice process that has a individualized right to present individualized defenses to a particular employment decision. It is so different than a misclassification wage in our case where we have to study, you know, every single thing a particular person is doing throughout the day to make a determination of how they spend their time. This is such a discreet and simple issue that if this cannot be presented by representative testimony and statistical survey extrapolation, I don't think anything can. And I don't believe that Walmart holds that there is no such thing as statistical sampling and representative testimony in class cases. Well, you only have 500 class members. Extremely small class compared to many wage and hour cases. That's why I really think I go back to what I said in the first place. You know, I don't always appeal the denial of certification. I get the discretionary issues we're dealing with. But if this one is not an abuse of discretion, I don't know what is. So the district court said the class action mechanism is not a superior device. Yes. So how would these individual plaintiffs pursue their claims? These individual class members pursue their claims. Do they go to the labor commission, small claims court? Their claims are so small that there is no way to get really meaningful adjudication of them out absent the class device. And that's why there's no evidence in the record any class member other than my client has done so, despite these violations. I mean, at least the rounding issue, that's a violation. Nobody says you can round 29. Well, they could take it to the labor commissioner, couldn't they? Yes, but the courts have consistently held that's not an adequate remedy that should defeat the class device. For starters, we have many current employees, and current employees fear retaliation. And that's an important reason we have to have the class device. And what's interesting on the superiority findings, when we think about it, the district court said the need to calculate the legality of the bonuses would tax the court. That exact need exists if it's an individual case. Those nine bonuses still have to be evaluated as an individual case. So the real burden on the court is having to do so if we get into this hypothetical construct where people actually pursue individual actions, which it hasn't happened. But if they do, there has to be 500 district courts or, you know, superior courts or labor commissioner hearings evaluating the very identical issue. So the district court said class certification is denied because individual issues predominate with respect to damages. Yes. If you prevail in front of us on that issue, what happens on remand? What's left to do on the class certification? I don't think there's anything left to do. And I don't think that I should – I believe this is one of those times where the case should be sent back with an order to certify these classes. I don't – there's – the 23A findings are made. The only issue is 23B. Predominance, I think, since there's a clear legal error that led to the predominance conclusion, which is the damage-only issue. Once that gets – if that gets reversed, there's nothing more to do there. And then the – on the predominance. So the only thing that would be left is superiority. And I don't think it makes sense to submit this back to the district court to do that finding when it's been fully briefed. There's no real argument that a class action isn't superior unless there's a manageability concern. The only basis for a finding of lack of superiority is manageability. And I think we've laid out in the briefing, and I hope I have here today, shown why this is a very manageable class. And there's absolutely no reason it shouldn't be certified as such by this court. Well, you can always get special master, do the calculations. Absolutely. All those typical – an administrative process, a special master process, even if there is – and I don't think there is – but even, you know, liability determinations and individual damage trials. I don't think that's necessary here. But all those devices are a better device than denying certification in a class of controversy or so minuscule, and the court acknowledges an overarching policy. Now, where is Lathrop, California? I knew you'd ask me something I don't recall. It is – I believe it is in – it's up north. I don't remember exactly where up north. North of what? I'm sorry. No. And the other is in the San Bernardino. San Bernardino area. Is that in Moreno Valley? It's – I believe it is. I believe so. It's in San Bernardino, and then there's a Fontana plant as well, I believe. Where the old Kaiser Steel plant was? I think so. I see I'm out of time, and absent further questions, I'll have to leave. Well, that's not a legitimate escape. And workers are minority people? Absolutely. The hourly wage was – if you could give me just one moment on that. If I'm recalling correctly, Mr. Leyva was somewhere in the $13, $14 an hour range. I know his total claim was about $7,400 and change if you include every penalty that was could possibly be recovered, but we're dealing with low-wage earners, yes. And the total amount that you estimate of overall value of the claim? What's that figure you just – Well, Mr. Leyva's individual claim would be about $7,400, his claim, but that would include if all penalties were recovered. His actual wages themselves that were taken were approximately I think $1,500 or something in that range. All right. Thank you. Thank you.  Good morning, Your Honor. My name is Steve Grude. I represent the defendant of Pele Medline Industries. This Court has made clear that the lower court's broad discretion in denying class certification is entitled to great deference. Here that deference dictates affirming the lower court's ruling because based on the record before it, the lower court properly concluded that liability is not capable of common proof and that the class action would not be superior. Now, it's a little bit of a different analysis for the two claims, and I'm frankly shocked that we're here today two years after this lawsuit was filed on the bonus claim, and I as a defense counsel, I've been counsel from day one, I still do not know what the plaintiff appellant is claiming was unlawful about my client's bonus policy. All the appellant has alleged here, Your Honors, is that the company pays everybody the same, and because the company pays everybody the same and the law requires that they be paid in a certain way, that we should go ahead and certify a class. But the appellant has not identified anywhere in the complaint, in the moving papers below, in the briefs, in deposition testimony or anywhere else. But that wasn't the basis for the trial court's denial of class certification. I mean, it may well be that you'll win on summary judgment on that claim. As I read the order below, the trial court seemed to say everything, this case qualifies for class certification except for Rule 23B3. Trial court didn't say because I don't understand one of the claims or because it's a bad claim or whatever. So I understand your argument, you may well be right, but I don't think that's the issue in front of us. Isn't the issue in front of us whether the judge abused his discretion in finding that the 23B3 requirement precluded class certification? And it's a threshold issue, Your Honor, but this court may affirm on any ground supported by the record. And what we know now in light of the Walmart case and even some precedent before it, is that there is an intermixing between merits. You don't go all the way to merits for purposes of summary judgment, but there is an intermixing of merits and a pleading. Otherwise, we would be just certifying a case against every employer in California based on unverified pleading. In fact, here, forget about the evidence for a second. Just talk about the allegation. Did you move to dismiss? We did not move to dismiss, Your Honor. So you thought the claims were at least, they alleged facts that showed plausible claims. Well, they alleged conclusory facts, Your Honor. They've alleged that basically you have to include the regular rate, excuse me, you have to include the bonus in the regular rate when you have a nondiscretionary bonus. And they just alleged that the company doesn't do that. But as it turned out, when they took our 30B6 deposition and they submitted the plaintiff's declaration and his deposition, there's no evidence at all of anything unlawful, nor have they even alleged it. They haven't identified for this court or the lower court. They haven't said we contend this particular bonus. So, Your Honor, before, even before the Walmart decision, courts were told one of the things they could consider is the nature of the case, you know, but the substance of the claim. The district court didn't take a look at that? If it did, it didn't expressly say so. We didn't have an oral argument below, Your Honor. It was, it was the court. Well, did you brief it? Yeah, we briefed it. We briefed it. We briefed it. We argued they were trying to certify a fiction. And do you think the judge looked at that argument? Well, it's hard to say for sure. But if you look at. . . Well, let me put it. . . Do you think he considered your argument? I do think he considered my argument, Your Honor. And if we look at the, in the superiority portion of the decision, the court, you know, gets into the rationales of not. . . This is bleeding over a little bit to the rounding aspect here and to appellant's arguments that the court purportedly decided, made this ruling based on a calculation of damages. But actually, if you look at the bottom paragraph on page 8 of the record, it says, as discussed earlier, if these four classes were certified, the court would need to determine the extent to which each putative class member lost wages, which is fact of damages. I'm adding that term there. And consequently suffered damages. And then it goes on. Since there are more than 500 putative class members, this process would tax the court's resources. So one of the things in that is the court, when you're looking at superiority, is balancing, you know, a number of things. In superiority, the court is supposed to be looking at the analysis from various viewpoints, from the plaintiff's view, the defendant's view, the public's view, the court's view. And from the court's standpoint, the court has its caseload. How does it tax the resources of the court? Well, it taxes the resources of the court in two ways, Your Honor, depending on which thing we're talking about. But on the bonus plan, you have approximately 538 class members as of the time this court was making the determination. And you have people, first of all, you're basically asking the court to consider something when there's not even an alleged awful act yet. So you're asking the court to consider an absolute fiction. I mean, I think at a minimum, the plaintiff should have to identify what it is he's claiming is unlawful. And the plaintiff should do that. But you can always move for summary judgment. See, I don't think that issue is in front of us. The trial judge, and if we send this back, presumably you can ask the trial judge to dismiss the bonus claim because it's not sufficiently flat or because there's no theory behind it. But I'm still wondering, given that the trial judge found, and when he goes through the 23A factors, he seems to find that every factor is satisfied except for 23B3. Is that a misreading of what he said? No, Your Honor. So with respect to 23B3, why doesn't this case fall within our previous cases that say that you shouldn't refuse to certify a class simply because the damages may be difficult to calculate for individual members? Because it wasn't decided based on the calculation of damages. It was decided based on the fact of damages, just as the provision I just read. Here's a good example, I think. If you had an employee named Sally Smith, and she clocked in 20 minutes before her shift started and her time got rounded, and the evidence was that she worked right away, she would be compensated. But the problem is that doesn't tell you anything about employee over here, John Jones. That's not capable of common proof. So now you have John Jones over here, and his punch data, because the appellant would like us just to take all the punch data and just add it up and put a price tag on it. But his punch data might say he clocked in 17 minutes before work, and then he went and got a cup of coffee in the break room, chatted with Bob for five minutes, and then he went to work. And in his case, he wouldn't be compensated. And so that's the problem. There's hundreds of individualized inquiries day by day, people after people, person after person, excuse me, and it's not capable of common proof. And if you go back and look, you know, it is different from an exemption case, and I'll concede that. Well, who created that problem? What problem, Your Honor? The one we're talking about. The problem, well, I'm wondering what you're referring to as a problem. Do you mean the, are you referring to the existence of a rounding policy? Yes. The company created that, and at this location, the only thing in the record as to why it was created was because employees were arriving at work early and hanging out in the break room not working after they clocked in. And so the company, there's no other evidence besides that in the record as to the why. So that's why it was created at this particular location. So employees arrived early. Yes, sir. And so they did this to, well, you know, a lot of times the big problem is that people arrive late, you know, or they don't show up. Now, here you've got a workforce where the big problem is they get to work late. Well, it's individualized, Your Honor, because when people arrive late, they actually get extra credit, if you will, because it's getting rounded back. So, for instance, if somebody came in at 8.06 or 8.07, it's getting rounded back to 8, and they're getting paid for time they weren't working. So that's the whole. I'm sorry? I'm sorry. Finish. That was basically, I was finished. But as to that class, at least under the theory that the opponent has, that the rounding practice is statutorily prohibited, as to liability, isn't that a pretty simple question for the judge to determine? It may well be that some members of the class weren't damaged and some others were, but surely the judge could decide as a legal matter, because it strikes me as just a legal issue, whether or not the rounding up policy is legal. The problem with that, Your Honor, is right now, you know, with the record we have, the only evidence is that the appellant himself clocked in sometimes, you know, early enough to be subject to this 29-minute issue. And so, really, in my view, it's not any different than if they had a one-hour rounding policy or a six-hour rounding policy or a 12-hour rounding policy. If nobody's coming to work, then the policy is a little bit irrelevant. You're dealing with about 500 people. That's a very, very small group. And I don't see where the difficulty is. I've handled some of these where I've dealt with thousands of people. And the trial court's got enough ingenuity to figure out how to handle that. It's not that hard. Your Honor, while I appreciate that 500 in the face compared to a class action of, you know, $1.5 million is on the opposite end of the continuum, I would concede that point. Ultimately, on the class certification analysis, the numerality of the number of cases I didn't say $1.5 million. Understood. Yeah. I was just throwing out a number because that, I think, was a number in the Duke's case, but it could be any number in between. I get that it's a relatively small number as punitive class actions go, but it doesn't change the analysis. It was locating nationwide a group of people who were entitled to subsidy payments that HUD did not make. And it ran into millions of dollars. But we had no problem figuring out what each person was entitled to. We had a system with a special master, and it's been a long time since I had this, but I didn't feel the least bit overwhelmed or overworked. And, you know, you have air crash cases where sometimes in a big accident you have hundreds of people who are killed or injured. Courts can handle those. But one of the differences, Your Honor, is the law has evolved some since then in that the Supreme Court in the Walmart case has now indicated you can't use the, you know, statistical sampling that was available in a lot of class actions in the past. Well, what's different in this, though? Well, the facts of the case are different. Well, what's significantly different? It's definitely a different case. But ultimately, we're here on an abuse of discretion standard, and under this Court's rules. Well, you know, you're right. We're here on abuse of discretion, and the district court, you know, they get wide discretion in what they do. But if you look, as Judge Hurwitz pointed out at the beginning, if you look at our case law, damage calculations has not been something that we've accepted as a basis for denying class certification, which is essentially the way I read what the judge did here. I respectfully disagree. Well, I mean, I agree with the first part about what the case law says. I read it before. I read it, you know, preparing for today's argument. And I read it as you were arguing. I went back to look at his reasoning, and it's pretty clear that's what he said. And if you look at our case law, it just doesn't support that. I agree with Your Honor on the case law aspect of this. He's not free to disregard our case law. He doesn't even discuss our case law. But he's not disagreeing, Your Honor. He's saying right here at the bottom of page 8 of the record, to the extent to which each putative class member lost wages. That's faculty damages. That's not calculation of damages because it goes on. And, consequently, suffered damages. But more importantly, ultimately, the review here is limited to assuring that he had basis and reason. And he identified all the Rule 23 factors. He went through, the trial court went through and talked about all those factors. And the trial court, although he didn't use the words suffered and permitted to work, that's really what we're talking about on the rounding claim is individual inquiries are at play to determine whether people were suffered and permitted to work. That's going back to my Sally and John example with employees, that you can't prove liability for multiple employees in one common way. Counsel, let me just go back. And I understand your point that you're not clear what the bonus claim is about. But aren't all these theories of liability simply questions of law? In other words, they don't depend on – I take it what he's saying is rounding up is illegal. A judge can say yes it is or no it isn't. He's saying that, you know, some of the classes are derivative of the other classes. But is there any of these – are there any of these classes in which the question of whether or not what your client did complied with the law is anything but a legal question? I understand the fact of damages, but I'm trying to figure out whether the legal theories are simply ones that can be resolved on summary judgment. The problem with that, Your Honor, is the answer is they are legal questions, but they're only theoretical legal questions on this record. So, for example, on the bonus claim, there's no allegation of anything in particular that they did unlawful. So it's just a theoretical thing that if they hypothetically – Put that aside for a second. I understand that you can't figure out what that claim is about. But at least as to the other three, aren't they just purely legal theories? They may be right. They may be wrong. Well, they are legal theories, but, again, they're hypothetical. So going to the rounding claim then, for instance, the rounding claim, their theory is that the 29-minute practice is unlawful, but they haven't identified anyone other than the appellant himself who actually clocked in to work pursuant to that policy. Clocked in sufficiently early that they would be subject to a 29-minute rounding policy as opposed to a 5, 10, or 15-minute rounding policy. So they did not put that record before the court. The court considered the record before it, and we're here today based on that record and the decision on that record. I see my time has expired. Are there any more questions, or shall I conclude? We'll give you a little more time, and we'll make it retroactive. Go ahead. Jacob, your point. Well, I'm basically finished, but just to sum it up, here the district court correctly selected the factors under Rule 23. The court applied those factors. There's a basis and reason for that decision. It's not individual damages prevent class certification, and therefore the district court did not abuse its discretion. Thank you very much. Thank you. Any rebuttal? I believe I'm out of time, but if there are questions, I'm more than happy to answer. I've seen shaking heads, so I will thank you for your time.
judges: Pregerson, Paez, Hurwitz